IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MAREN MAGGIO,                                            Case No. 3:23-cv-00116-JR

        Plaintiff,                                         FINDINGS AND
                                                              RECOMMENDATION

  v.

OREGON HEALTH AND SCIENCE
UNIVERSITY, an Oregon Public Corporation,

        Defendant.
_____

RUSSO, Magistrate Judge:

Defendant Oregon Health and Science University ("OHSU") moves to dismiss plaintiff Maren Maggio's First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, OHSU's motion should be granted.

Page 1 – FINDINGS AND RECOMMENDATION

# BACKGROUND

OHSU, a teaching hospital located in Portland, Oregon, hired plaintiff in November 2014 as a Revenue Cycle Manager. FAC ¶¶ 5, 7 (doc. 17). Starting in September 2019, plaintiff worked remotely "approximately 80% of the time because of a lack of space in Defendant OHSU's new Center for Health and Healing." *Id.* at ¶ 8. As of the start of the COVID-19 pandemic in March 2020, plaintiff worked 100% remotely. *Id.* at ¶ 9.

In August 2021, at the height of the pandemic, Governor Brown sought to limit the spread of the potentially deadly coronavirus in the state's healthcare facilities by issuing an executive order requiring workers in healthcare settings to be vaccinated against COVID-19 by October 18, 2021. *Johnson v. Brown*, 567 F.Supp.3d 1230, 1238 (D. Or. 2021); *see also Johnson v. Brown*, 614 F.Supp.3d 776, 782 (D. Or. 2022) ("[t]he decision to require vaccination among critical populations, such as healthcare workers and providers and education workers and volunteers, is a rational way to further the State's interest in protecting everyone's health and safety during the COVID-19 pandemic"). Any employee seeking a religious exception to the vaccine mandate had to fill out and submit certain forms provided by OHSU. FAC ¶¶ 10-12 (doc. 17); *see generally* FAC Exs. 1-2 (doc. 17).

"On September 20, 2021, Plaintiff informed Defendant of her sincerely held religious beliefs which prevented her from receiving an experimental Covid- 19 vaccination." FAC ¶¶ 13-14 (doc. 17). In particular, plaintiff stated:

> My personal religious observances, practices and beliefs are personal to me. In additio[n] I have several reasons for declining the Covid-19 shot which goes beyond Religious and Medical reasons.
>
> I respectfully decline to consent to receive the Covid-19 shot at this time for the following reasons: (a) The Covid-19 vaccine shot is now proven as NOT SAFE as was promised and promoted just months ago and POTENTIALLY DEADLY either in the immediate aftermath or shortly after or in the long term (Medical Rights

Page 2 – FINDINGS AND RECOMMENDATION

> Violation) (b) The Mandate violates my personal religious faith (Religious Rights Violation) (c) The Mandate violates my personal choice to make medical choices for my own body (Civil Rights Violation) (d) The Mandate violates my fundamental rights and freedoms as a free citizen to make my own choices without duress, coercion or intimidation by government or government supported entities such as Oregon Health and Sciences University (OHSU) (Constitutional Rights Violation).
>
> To this, I hereby state categorically that I DO NOT CONSENT and I do not wish to receive the Covid-19 (vaccine) under the present circumstances and especially following recent disclosures by the Food & Drug Administration (FDA) [a]cknowledging the health risks and dangers of the Covid -19 vaccine.

FAC Ex. 3, at 1 (doc. 17).

Plaintiff also included an addendum outlining a number of questions and concerns surrounding insurance, the FDA, and the safety and efficacy of the current COVID-19 vaccines.

*Id.* at 2-5. In a section soliciting additional information, plaintiff wrote:

> There are several beliefs, observances and practices which are my personal and individual rights and not for OHSU to evaluate.
>
> Mandates in a democratic society of free people are not laws but executive orders by "fiat" by those in authority under the assumption they are taking measures to protect the general population. However, what if those in authority issuing the mandate are wrong or intentionally malevolent for reasons or agenda unknown and undisclosed to the general population? What if those in authority issuing the mandate have deliberately withheld crucial data or those advising them withheld crucial data to them and thus endangering the health of the general population by denying them the right of individual consultation with their own doctors? Unilateral mandates such as proposed for this Covid-19 vaccine in the face of already disclosed dangerous side effects and deaths are an egregious violation of fundamental human rights, individual civil rights, a of a medical mandate . . .
>
> My personal decision is informed by my religious beliefs and intense personal research for the truth which has taken many months and countless hours. These additional medical and scientific data now in the public domain from some of the top epidemiologists, virologists, scientists and renowned healthcare professionals which informed my decision to unequivocally reject this vaccine mandate. I strongly urge you to review these yourself as I have so you can see what I have learned and the basis of my decision. I have enclosed massive amount of data.

*Id.* at 5.

Page 3 – FINDINGS AND RECOMMENDATION

Plaintiff then included a number of links to articles and videos, accompanied by her narrative interpretations that were centered on doubts surrounding the existence of COVID-19 and the dangers associated with vaccines. *Id.* at 6-10. She concluded her exemption request by stating: "Statistics clearly show that coronavirus does not represent a serious threat to people of my demographic [whereas] the experimental vaccine shot could be a 'death sentence' . . . I do not wish to receive the Covid-19 vaccine under this circumstance at this moment because it is yet to be declared safe." *Id.* at 11-13. Plaintiff acknowledged, however, that she "would reconsider receiving a Covid-19 (vaccine) if" certain nonreligious criteria were met, including "[t]he vaccine manufacturers (Moderna, Pfizer, AstraZeneca and J&J) fully guarantee[ing] the safety of their products and the existing financial immunity currently granted to them by the government [being] fully withdrawn." *Id.*

Finally, in the "Authorization" section, plaintiff specified:

> I do not consent to this attempt to intrude into my personal religious and spiritual beliefs and practices by the government or a government supported agency such as OHSU. My personal belief and my spiritual relationship with almighty GOD the creator is a private matter. Neither the government nor OHSU has the right to interfere and inquire about my personal religious beliefs all in the name of a Medical Emergency. It is unconstitutional and will not stand in any court of law. My rights as a citizen is endowed by the creator and no political government has the right to infringe upon it under the guise of a Controversial Medical Emergency especially when those issuing the "Medical Mandate" have exempted themselves from it.

*Id.* at 15.

In connection with her religious exception request, OHSU required plaintiff to "sign the form and 'acknowledge and affirm' statements that were inconsistent with [her] stated religious beliefs." FAC ¶ 17 (doc. 17). "Specifically, to affirm the statement: 'I understand if I am not vaccinated, I may become sick with COVID-19. This may put my family, coworkers, friends or people around me at risk of serious illness, disability or death.'" *Id.*; FAC Ex. 2 (doc. 17). "When

Page 4 – FINDINGS AND RECOMMENDATION

submitting the OHSU Form, [plaintiff] altered her affirmation to state: 'I understand OHSU's position is that if I am not vaccinated, I may become sick with COVID-19. This may put my family, coworkers, friends or people around me at risk of serious illness, disability or death.'" FAC ¶ 17 ([doc. 17](doc. 17)).

On September 22, 2021, OHSU published "Criteria for vaccine policy exceptions," which "provided examples of beliefs or past behavior 'that may disqualify an individual from receiving a religious exception' including, 'receiving another vaccine in the last five years' and 'an objection to the vaccine on the basis of fetal cell concerns.'" *Id.* at ¶ 18.

OHSU subsequently provided examples of beliefs that did not qualify under its criteria for a religious exception:

> ● Arguments for free will or against compulsion.
> - This does not refer to the vaccine, but instead your right to have a religious freedom or conscientiously object to the vaccine.
>
> ● Concerns over vaccine safety or content.
> - There are not religious arguments and often inconsistent with proven facts.
>
> ● An objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development.
> - These professed beliefs are personal moral choices and/or conscientious objections rather than a tenet of religious faith.
> - No fetal tissue or cells are contained in any of the vaccines currently available under FDA approval or emergency use authorization in the U.S.
> - While they played no role in their development or production, HEK-293 cell lines created over 50 years ago were used in confirmatory testing of the current mRNA vaccines. Cells from the same line have commonly been used in biological testing since the late 70s. This cell line is used in the testing of many common medicines, including Tylenol, Advil, Aspirin, Claritin, Benadryl, Pepto-Bismol, Mucinex, Tums and Prilosec, among many others.
>
> ● A personal revelation from God about the vaccine, an objection to the vaccine based on bodily integrity or sanctity, and/or a belief that the vaccine is "unclean."
> - These are personal moral choices and/or conscientious objections rather than a tenet of religious faith.

*Id.* at ¶ 19.

Page 5 – FINDINGS AND RECOMMENDATION

On October 5, 2021, OHSU denied plaintiff's request for a religious exception. *Id.* at ¶ 20; FAC Ex. 4 (doc. 17). Plaintiff alleges that – via this "accommodation denial email" (as well as its "Form") – OHSU "communicated to [her] that her beliefs, even if sincere, were mistaken or not religious in nature, and encouraged [her] to act contrary to her stated beliefs by receiving a COVID-19 vaccination." FAC ¶ 21 (doc. 17).

On December 2, 2021, OHSU "notified [plaintiff] it was terminating [her] employment." *Id.* at ¶ 23. On December 2, 13, and 15, 2021, plaintiff made additional "request[s] for religious accommodation to which Defendant refused to respond." *Id.* at ¶ 22. And OHSU "did not engage in an interactive process with [plaintiff] about accommodations for her religious beliefs at any time." *Id.* at ¶ 24.

On January 24, 2023, plaintiff initiated this lawsuit, alleging claims for: (1) religious discrimination under Title VII; (2) disability discrimination under Or. Rev. Stat. § 659A.112; and (3) First Amendment violation under 42 U.S.C. § 1983. On September 20, 2023, the Court granted OHSU's motion to dismiss plaintiff's disability discrimination and First Amendment claims. *See generally Maggio v. Or. Health & Sci. Univ.*, 2023 WL 6148938 (D. Or. June 1), *adopted by* 2023 WL 6147196 (D. Or. Sept. 20, 2023). Although plaintiff was granted leave to replead, she abandoned these claims in her FAC and instead is proceeding exclusively under Title VII.

On October 24, 2023, OHSU filed the present motion to dismiss. Briefing was completed in regard to that motion on December 19, 2023.

## STANDARD OF REVIEW

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). For the purposes of a motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). Regardless, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Bacca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## DISCUSSION

OHSU contends prejudicial dismissal is warranted because plaintiff "fails to plausibly allege that she had a bona fide religious belief that conflicted with OHSU's policy." Def.'s Mot. Dismiss 2 (doc. 20). In particular, the FAC "says virtually nothing about what Plaintiff's religious beliefs are, let alone why they prevent her from receiving a COVID-19 vaccine [but] discusses – in considerable detail – secular objections to OHSU's vaccination policy." *Id.* According to OHSU, plaintiff "also fails to allege that she sufficiently informed OHSU of any religious objection to the vaccination policy [and] told OHSU that she might ultimately receive the COVID-19 vaccine if the vaccine is proven safe, confirming that her religion does not in fact prohibit vaccination." *Id.* at 2-3.

In contrast, plaintiff asserts: "If rejection of COVID-19 vaccination can be defined by an employer as a matter of policy as secular, not religious, then the right to religiously dissent embodied in the First Amendment and protected in employment under Title VII is a dead letter." Pl.'s Resp. to Mot. Dismiss 2 (doc. 24). Plaintiff thus contends her claim should go forward because she "alleges she is a Christian, has a bona fide and sincere religious belief that prevents her from receiving a COVID-19 vaccination, and cannot in good conscience receive a COVID-19

vaccine" – that is, whether her "rejection of COVID-19 vaccination is in her own scheme of things, religious, is not a decision that can be made by the Court on a Fed. R. Civ. P. 12(b)(6) motion." *Id.* at 2-3. Additionally, plaintiff argues dismissal is improper because "Defendant's Motion does not address [her] religious harassment claim." *Id.* at 6.

As an initial matter, the FAC does not, in fact, include a separate cause of action for "religious harassment" and plaintiff has not cited to any case law creating or sanctioning such a claim in this context. The sole precedent on which she relies – i.e., *Venters v. City of Delphi*, 123 F.3d 956 (7th Cir. 1997) – is factually distinguishable. *See id.* at 976-77 (the plaintiff's supervisor constantly lectured her about her sins, her prospects for salvation, and her need to embrace "God's way" over "Satan's," and even made remarks that "were on their face scandalous," including that the plaintiff "had had sex with family members and possibly animals . . . and that committing suicide would be preferable to the life [she] was living"). Assuming hostile work environment claims based on religion are cognizable under Title VII, plaintiff's purported claim does not appear to fit within that framework, as the FAC neglects to address salient elements. *See Cook v. Cub Foods, Inc.*, 99 F.Supp.2d 945, 948 (N.D. Ill. 2000) (to state a plausible religious harassment claim, the plaintiff must allege employer conduct that: (1) "is sufficiently severe or pervasive so as to alter the conditions of employment"; (2) is "both objectively and subjectively hostile"; and (3) "had a religious character or purpose") (citations omitted); *see also Hampe v. Cal., Dep't of Corr.*, 2000 WL 1585263, *6 (E.D. Cal. July 31, 2000), *aff'd*, 21 Fed.Appx. 744 (9th Cir. 2001) (discussing Title VII religious harassment claims).

Further, the fact that OHSU solicited information and required employees to submit paperwork to process medical or religious exception requests does not create a plausible inference of discriminatory motive. To the extent plaintiff relies on OHSU's "Criteria for vaccine policy

Page 8 – FINDINGS AND RECOMMENDATION

exceptions," or the stated examples of beliefs that did not qualify under those criteria, they were promulgated after she sought a religious exemption. In other words, those resources could not have informed or impacted plaintiff's particular request. Thus, the Court does not find plaintiff's contentions surrounding the presence of an unaddressed religious harassment claim persuasive. With that in mind, the Court turns to the substance of plaintiff's primary allegations.

Title VII makes it unlawful for an employer to discriminate against an individual in the terms and conditions of employment because of religion. To establish a prima facie case for religious discrimination based on a failure-to-accommodate, the plaintiff must demonstrate that: (1) she "had a bona fide religious belief, the practice of which conflicted with an employment duty"; (2) she "informed [her] employer of the belief and conflict"; and (3) "the employer discharged, threatened, or otherwise subjected [her] to an adverse employment action because of [her] inability to fulfill the job requirement." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). If the plaintiff "makes out a prima facie failure-to-accommodate case, the burden then shifts to [the defendant] to show that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id.* (citations and internal quotations omitted).

Concerning the first prima facie element, Title VII defines "religion" to include "all aspects of religious observance and practice, as well as belief." *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998) (quoting 42 U.S.C. § 2000e-2(a)(1)). Nevertheless, "Title VII does not protect secular preferences." *Id.* at 682.

Specific to COVID-19 vaccination mandates, the U.S. Equal Employment Opportunity Commission ("EEOC") has provided guidance to employers navigating claimed religious exemptions, explaining that, "although Title VII prohibits employment discrimination based on

Page 9 – FINDINGS AND RECOMMENDATION

religion, an employee's request for an exemption from a COVID-19 vaccination mandate can be denied on the ground that the employee's belief is not truly religious in nature[.]'" *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021). The EEOC's guidance notes objections that "are purely based on social, political, or economic views or personal preferences, or any other nonreligious concerns (including about the possible effects of the vaccine)" are not protected by Title VII. *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, EEOC (Oct. 25, 2021), *available at* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L.  "However, overlap between a religious and political view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system and is not simply an isolated teaching." *Id.*

Federal district courts have grappled with the contours of the first prima facie element. Title VII broadly defines religion and "American courts are loath to tell a person that his interpretation of his faith is a wrong one." *Hittle v. City of Stockton*, 2022 WL 616722, *5 (E.D. Cal. Mar. 2, 2022), *aff'd*, 76 F.4th 877 (9th Cir. 2023). At the same time, courts have generally been hesitant to find broad statements of religious opposition sufficient to state a viable claim. *See Bolden-Hardge v. Office of the Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023) (courts are not required to "take plaintiffs' conclusory assertions of violations of their religious beliefs at face value"); *see also Kather v. Asante Health Sys.*, 2023 WL 4865533, *5 (D. Or. July 28, 2023) ("vague expressions of sincerely held Christian beliefs alone cannot serve as a blanket excuse for avoiding all unwanted employment obligations" and a "'threadbare reference' to religious beliefs is insufficient at the motion to dismiss stage").
Page 10 – FINDINGS AND RECOMMENDATION

As such, contrary to plaintiff's assertion, Title VII claims surrounding COVID-19 vaccine mandates and corresponding accommodations have necessitated that courts undertake the delicate task of differentiating between what beliefs are religious and which are not. Cf. *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972) ("the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests"); see also *Mason v. Gen. Brown Cent. Sch. Dist.*, 851 F.2d 47, 51 (2d Cir. 1988) ("[a]n individual's assertion that the belief [is religious does not] automatically mean that the belief is religious . . . a threshold inquiry into the religious aspect of particular beliefs and practices cannot be avoided if we are to determine what is in fact based on religious belief, and what is based on secular or scientific principles") (collecting cases).

To that end, virtually every court examining the beliefs invoked by plaintiff has held that Title VII's protections do not apply. *See, e.g.*, *Brox v. Hole*, 590 F.Supp.3d 359, 366 (D. Mass. 2022); *Mason*, 851 F.2d at 51-52; see also *Passarella v. Aspirus, Inc.*, 2023 WL 2455681, *5-6 (W.D. Wis. Mar. 10, 2023) ("personal judgments about vaccine safety [are] not . . . religious reasons . . . the use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion"). *Petermann v. Aspirus, Inc.*, 2023 WL 2662899, *2 (W.D. Wis. Mar. 28, 2023) ("[i]f [the plaintiff believes] that the vaccine defiled her body because it was unhealthy or unsafe, that would be a medical objection, not a religious objection"); *Ellison v. Inova Healthcare Servs.*, 2023 WL 4627437, *5 (E.D. Vir. July 19, 2023) ("exemption requests predicated fundamentally on concerns with [safety] and [the plaintiffs'] right to bodily integrity – even if based on the belief that [the plaintiff's] body is a temple and ratified by prayer – are fundamentally medical judgments [and] not matters of religious belief") (citation and internal quotations omitted).

Here, the well-plead allegations (along with plaintiff's actual communications with OHSU) show that plaintiff's decision to refuse the COVID-19 vaccine was based on personal preferences and/or medical/scientific judgments. In fact, plaintiff's exemption request patently intimates that her religious beliefs do not strictly prohibit her from receiving the COVID-19 vaccine. FAC Ex. 3, at 11-12 (doc. 17); *see also Bube v. Aspirus Hospital, Inc.*, 2023 WL 6037655, *1-4 (W.D. Wis. Sept. 15, 2023) (dismissing Title VII claims where the plaintiffs used "vaguely religious language when they informed [their employer] that they objected to receiving the vaccine [but] more specific language in their objections revealed that their objections were really based on their personal views about the necessity, efficacy, and safety of the vaccine").

To the extent her allegations and exemption request actually invoke her Christian faith, plaintiff nonetheless neglected to identify any religious tenet or teaching that conflicts with OHSU's policy. *See Rogers v. Neb. Urb. Indian Health Coal., Inc.*, 2023 WL 2990720, *5 (D. Neb. Apr. 18, 2023) (dismissing a Title VII claim where the plaintiff did "not articulate or describe any particular beliefs that she maintains [or] provide even a perfunctory explanation as to how her beliefs conflict with receiving a COVID-19 vaccine"); *see also Stephens v. Legacy-GoHealth Urgent Care*, 2023 WL 7612395, *4-6 (D. Or. Oct. 23), *adopted as clarified by* 2023 WL 7623865 (D. Or. Nov. 14, 2023) ("[g]eneral references to Christianity do not meet even a 'fairly minimal' burden at the pleading stage, as such allegations are conclusory and fail to plausibly to suggest that a plaintiff's anti-vaccination beliefs are in fact religious").

Plaintiff expressly declined to provide any details about her "personal religious and spiritual beliefs and practices." FAC Ex. 3, at 15 (doc. 17). While this is certainly plaintiff's choice, precedent makes clear that "[a]n employee cannot shirk his duties to try to accommodate himself or to cooperate with his employer in reaching an accommodation by a mere recalcitrant citation of

Page 12 – FINDINGS AND RECOMMENDATION

religious precepts." *Chrysler Corp. v. Mann*, 561 F.2d 1282, 1285-86 (8th Cir. 1977). Stated differently, the employee bears the burden of establishing that "she informed her employer of the [bona fide religious] belief and conflict." *Tiano*, 139 F.3d at 681. In sum, the Court readily accepts that plaintiff holds bona fide Christian beliefs, but her broad invocations of faith and/or research-based scientific/medical judgments as to what is harmful are not sufficient to state a claim in this context.

Despite the FAC's deficiencies, the Court declines to dismiss plaintiff's remaining claim with prejudice. She has not yet had the opportunity to address these pleading deficiencies and the Court cannot conclude, at least at this stage in the proceedings, that they are incurable as a matter of law, especially given the other undeveloped allegations surrounding religious harassment. The Court nonetheless notes that this case has been pending for one year and plaintiff has already had the opportunity to amend her complaint. Therefore, plaintiff shall be afforded one final opportunity to seek amendment.

## RECOMMENDATION

For the reasons stated herein, OHSU's Motion to Dismiss (doc. 20) should be granted. The parties' requests for oral argument are denied as unnecessary. Any motion to amend the complaint must conform with this Findings and Recommendation and be filed within 30 days of the District Judge's order.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have

fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 8th day of January, 2024.

        /s/ Jolie A. Russo
        Jolie A. Russo
        United States Magistrate Judge